Eastern District of Kentucky
F I L E D
JUL 0 2 2014
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br><br> V. <br><br> JOSIEL FLORES, <br> Defendant. | CRIMINAL ACTION NO. 5:13-97-KKC <br><br> OPINION & ORDER |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a motion to suppress evidence filed by Defendant Josiel Flores. (DE 320). Flores contends that he was subjected to an illegal search and seizure by officers within the Butts County Sheriff's Office in Butts County, Georgia. He moves the Court to suppress evidence obtained from the search and seizure. For the following reasons, the Court will deny the defendant's motion.

I.

The relevant facts in this case are undisputed and a hearing is therefore unnecessary.[1] On April 26, 2011, Josiel Flores was driving on Interstate 75 in Butts County, Georgia. Deputy Michael Broce initiated a traffic stop after he observed Flores traveling approximately 10 miles per hour below the speed limit in the center lane of the highway. Broce also observed that the Toyota driven by Flores had tinted windows that were too dark under Georgia law. After making the stop, Broce approached the passenger-side window of

---

[1] On May 15, 2014, the Court ordered the defendant to inform it as to whether or not an evidentiary hearing was still necessary in light of the apparently undisputed facts. (DE 349). Flores failed to file a reply as directed, which indicates to the Court that he no longer believes a hearing on the matter is required. The Court additionally reviewed the video evidence filed in this case and found that it corresponds with the factual claims made by Flores in his initial brief. Accordingly, the Court accepts those factual claims and declines to hold an evidentiary hearing.

the car, spoke with the driver, and asked for identification. Flores handed the officer a fake Kentucky state-identification card, and Deputy Broce asked him to step out of the vehicle.

Once outside of the vehicle, Broce asked Flores if he had any guns or knives. Flores answered no, but pointed to a bulge in his pocket that he said was money he was carrying to buy a car. Broce conducted a pat down and asked to see the money. When Flores emptied his pocket, Broce placed the money on the hood of his car and finished the pat down.

At this point, Broce informed Flores he would be writing him a warning for his slow speed and tinted windows. Another officer with Deputy Broce, Sargeant Nix, approached the car and began interviewing the other passengers. Broce proceeded with writing the warning citation. When Nix finished interviewing the passengers, he took over writing the citation to allow Broce to conduct a free-air scan of the vehicle with his narcotics-detecting canine. During the scan, the canine alerted to the driver-side front door. Deputy Broce informed Flores and the two passengers about the alert and explained that they would be handcuffed while he conducted a search of the vehicle. Broce then searched the car and discovered drug paraphernalia, opiate residue, and approximately $124,236 hidden in the doors of the vehicle. Flores and the two passengers were subsequently taken to the Butts County Sheriff's Office for further questioning. He now moves to suppress all evidence obtained during the encounter on the grounds that the officers violated his Fourth Amendment rights.

## II.

The Fourth Amendment's prohibition against unreasonable searches and seizures "extend[s] to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Chandler*, 437 Fed. App'x 420, 425 (6th Cir. 2011) (quoting *United States v. Luqman*, 522 F.3d 613, 616 (6th Cir. 2008)). "A traffic stop is reasonable under the

Fourth Amendment where the stop was both proper at its inception and 'reasonably related in scope to the circumstances . . . [that] justified the . . . [stop] in the first place.'" *United States v. Garrido-Santana*, 360 F.3d 565, 570–71 (6th Cir. 2004) (quoting *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000)). An officer is permitted to make an investigative stop when he has "probable cause to believe a civil traffic violation has occurred." *See Gaddis ex rel. Gaddis v. Redford Tp.*, 364 F.3d 763, 771 n. 6 (6th Cir. 2004) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). "[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005) (citing *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996)). Moreover, when an officer conducts a traffic stop, he is permitted to make a limited search of the individual's "outer clothing for weapons [ ] to protect both the officer and the public." *Arizona v. Johnson*, 555 U.S. 323, 330 (2009) (quoting *Terry v. Ohio*, 392 U.S. 1, 23–24 (1968)). Such patdowns are necessary for an officer's safety and do not violate the Fourth Amendment.

Deputy Broce had probable cause to make the initial traffic stop. According to his police report, Broce observed Flores driving below the speed limit in the center lane of the highway in a car with windows tinted too darkly. Flores argues that the stop was unlawful because Broce never performed a test to demonstrate that the windows were too dark, and because Flores was only driving slowly as a response to oncoming traffic. But both of these arguments misunderstand the law. Whether Flores actually violated the law is immaterial. The question is only whether Deputy Broce had probable cause to suspect that Flores was committing a traffic violation. "Probable cause is a reasonable ground for belief *supported by less than prima facie proof* but more than mere suspicion." *United States v. Blair*, 524

F.3d 740, 748 (6th Cir. 2008) (emphasis added). Flores acknowledges he was driving slowly in the center lane, and an ex post explanation as to *why* he was doing so does not affect the determination by Broce that Flores was impeding traffic. Broce had probable cause to make the traffic stop based on Flores's slow speed.

Similarly, the relevant question is not whether Flores's tinted windows actually violated Georgia law, or whether Broce examined the tinting after making his initial stop. Rather, the question is whether he had probable cause to believe the window tinting was unlawful at the time of the stop. Ultimately, however, the Court need not decide this question, as Flores's slow speed provided sufficient justification to initiate the traffic stop regardless of whether Flores's windows were too dark.

Upon pulling Flores over, Broce requested identification and was provided a fake Kentucky identification card. He then asked Flores to step out of the vehicle and meet him at the rear. Contrary to Flores's claim, this does not violate the Fourth Amendment even if Broce had "no reasonable articulable suspicion that anything more than a mere traffic offense had been committed." (DE 320, at 5). Officers conducting a traffic stop have the unequivocal right to order both the driver and any passengers out of the car regardless of whether they suspect criminal activity beyond the initial traffic violation. *See Johnson*, 555 U.S. at 330–31 (reviewing case law regarding traffic stops and noting that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures"). Deputy Broce did not violate the Fourth Amendment by ordering Flores to step out of the car.

When Flores stepped out of the car, Deputy Broce asked him whether he had any guns or knives on him. Flores said no, pointed to a bulge in his pocket, and informed Broce he

4

had money he intended to use to buy a car. Deputy Broce used his hand to feel the bulge and said, "Let me look at it." Flores then removed a large bundle of cash, which he stated was between six and eight thousand dollars. Broce then finished performing a quick pat down on Flores's clothing.

Flores makes a two-fold argument regarding the money he produced from his pocket. First, he moves to have it suppressed on the grounds that Broce violated the Fourth Amendment by ordering him to remove it. Second, Flores contends that Broce would not have articulable suspicion to perform the subsequent free-air scan of his vehicle with the narcotics canine if Broce had not first unlawfully obtained the money. Thus, according to Flores, the evidence obtained from his Toyota Avalon must also be suppressed as fruit of the poisonous tree. The Court rejects both of the claims.

To begin, Flores is incorrect in asserting that the money was obtained through an unlawful search. An officer conducting a traffic stop may make a limited search of the individual's "outer clothing for weapons [ ] to protect both the officer and the public." *Johnson*, 555 U.S. at 330 (quoting *Terry*, 392 U.S. at 23–24). Deputy Broce ordered Flores to remove the money from his pocket as part of a routine pat down for officer safety. His request came after asking if Flores had any weapons, and Flores pointed to the bulge in his pocket and stated he was carrying money to purchase a car. Broce felt the bulge with his hand and asked to see it before continuing with the pat down. Clearly, Broce was entitled under *Terry* to ensure that the bulge was not a weapon that would put him and his fellow officers in danger.

But even if Broce's request to see the money constituted an unlawful search, its impact would be limited. Contrary to the argument made by Flores, Deputy Broce did not need articulable suspicion in order to conduct the free-air scan with his canine unit. The

Supreme Court has held that "the use of a well-trained narcotics-detection dog—one that does not expose noncontraband items that otherwise would remain hidden from public view—during a lawful traffic stop, generally does not implicate legitimate privacy interests." *Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (internal quotations omitted). Because there is no legitimate privacy interest at stake, the free-air scan itself does not require articulable suspicion to pass constitutional muster. *Id.*

It is only when the free-air scan prolongs the duration of the stop that the Fourth Amendment is implicated. "To qualify as reasonable seizures under the Fourth Amendment, *Terry* detentions must be 'limited in [both] scope and duration.'" *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). In this regard, a stop "must . . . last no longer than is necessary to effectuate the purpose of the stop." *Id.* Accordingly, the Supreme Court has held that although "a dog sniff performed during a traffic stop does not violate the Fourth Amendment . . . . a lawful seizure 'can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.'" *Muehler v. Mena*, 544 U.S. 93, 101 (2005) (quoting *Caballes*, 543 U.S. at 407).

The defendant, however, does not argue that the traffic stop was unreasonably prolonged by the scan of the vehicle. The Court viewed the video evidence of the traffic stop filed into the record to determine whether Deputy Broce extended the duration of the traffic stop to conduct the canine scan. The video makes it clear that the free-air scan did not prolong the duration of the stop. Prior to the canine alerting on the vehicle, the stop lasted less than ten minutes. Deputy Broce informed Flores he would be issuing a warning for impeding traffic and the tinted windows. He began writing the citation while the other officers on the scene asked the passengers questions about their trip. One of the officers,

6

Sargeant Nix, finished questioning the passengers and walked toward Deputy Broce to speak to him. At this point, Sargeant Nix took over responsibility for writing the citation while Deputy Broce conducted the scan of the vehicle. There was no interruption of the citation process prolonging the stop, and therefore no constitutional violation.

The constitutionality of the canine scan sheds further light on Deputy Broce's seizure of Flores's money after the pat down. As established above, Broce did not need the money to establish articulable suspicion and conduct the free-air scan of the vehicle. Once the canine alerted to the presence of narcotics, Broce performed a search and discovered drug paraphernalia and opiate residue. The individuals were transported to the Butts County Sheriff's Office where they were interviewed by the Butts County Narcotics Division. At this point, there is no doubt that Deputy Broce would have had probable cause to search Flores and the passengers for narcotics and related contraband. Such a search would lead to the inevitable discovery of the money in Flores's pocket. "[W]here 'tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered.'" *United States v. Witherspoon*, 467 Fed. App'x 486, 490 (6th Cir. 2012) (quoting *Murray v. United States*, 487 U.S. 533, 539 (1988)). This rule applies "(1) when an 'independent, untainted investigation . . . inevitably would have uncovered the same evidence'; or (2) when there exist 'other compelling facts establishing that the disputed evidence inevitably would have been discovered.'" *Id.* (quoting *United States v. Kennedy*, 61 F.3d 494, 499 (6th Cir. 1995)).

Here, Deputy Broce uncovered drug paraphernalia and approximately $124,236 hidden in the doors of the vehicle. Under these circumstances, he would have probable cause to arrest and search Flores for any contraband he might be hiding on his person, and the cash would inevitably be discovered. Probable cause is "reasonable grounds for belief, supported

7

by less than *prima facie* proof but more than mere suspicion." *United States v. Richardson*, 40 Fed. App'x 7, 13 (6th Cir. 2002) (quoting *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998)). This evidence discovered in the car provides reasonable grounds to believe that Flores and his companions were engaged in drug-trafficking sufficient to justify an arrest, and upon such an arrest Deputy Broce would be permitted to search Flores's person for any other contraband or evidence of the crime. *See id.* (citing *Chimel v. California*, 395 U.S. 752, 763 (1969)). Accordingly, the cash would have been inevitably discovered and the exclusionary rule would not apply.

### III.

The stop in this case was supported by probable cause that Flores was committing a traffic violation. Deputy Broce's actions in ordering Flores out of the car and conducting a pat down for officer safety was within the bounds of the Fourth Amendment. Likewise, there was no constitutional violation in ordering that Flores remove the money from his pockets, nor in Broce's decision to conduct a free-air scan of the vehicle with his narcotics-detecting dog. For these reasons, **IT IS ORDERED** that Defendant Josiel Flores's motion to suppress (DE 320) is **DENIED**.

Dated this 2nd day of July, 2014.



Signed By:
Karen K. Caldwell
United States District Judge